UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN BRAMER,<br><br>            Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | No. 2:16-cv-00593-CKD<br><br><br>ORDER |

Plaintiff Melvin Bramer seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and for Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act ("Act"), respectively.[1] In his motion for summary judgment, plaintiff principally argues that the Commissioner erred by finding that plaintiff was not disabled. (ECF No. 20 at 4.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 21.)

////

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 8, 9.)

1

After carefully considering the record and the parties' briefing, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and affirms the Commissioner's final decision.

I. BACKGROUND

Plaintiff was born on August 23, 1957; completed two years of junior college where he obtained an associate's degree; and previously worked as service supervisor, car salesman, finance manager, and diner owner/manager. (Administrative Transcript ("AT") 27–31, 228–29.)[2] On August 23, 2012, plaintiff applied for DIB, alleging that his disability began on July 1, 2011. (AT 198.) Additionally, plaintiff filed for SSI on August 27, 2012, again alleging disability beginning on July 1, 2011. (AT 205.) Plaintiff claimed that he was disabled due to heart failure, stent in heart, back injury, Harrington rods in back, diabetes, ulcer in upper and lower GI tract, hardware in lower extremities, and high blood pressure. (AT 227.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on April 2, 2014. (AT 24–75.) Plaintiff amended the onset date of alleged disability to August 2012 at the hearing, because he had continued to work until August 2012, when he suffered a heart attack. (AT 31–32.) The ALJ issued a decision dated September 4, 2014, determining that plaintiff has not been under a disability, as defined in the Act, from August 1, 2012 through the date of the ALJ's decision. (AT 6–18.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 19, 2016. (AT 1–4.) Plaintiff subsequently filed this action on March 22, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ failed to properly credit Dr. Trusnovic's treating opinion; (2) whether the ALJ improperly discounted plaintiff's

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

credibility; and (3)whether the ALJ erred in not finding that plaintiff suffered from a severe mental impairment at step two.[3] (ECF No. 20 at 13.)

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[4] As a preliminary matter, the ALJ found that plaintiff

---

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

met the insured status requirements of the Act through September 30, 2016. (AT 11.) At the first step, the ALJ found that plaintiff "has not engaged in substantial gainful activity since August 1, 2012." (Id.) At step two, the ALJ determined that plaintiff has the following severe impairments:

> cervical, thoracic and lumbar spine degenerative changes with intact Harrington rods from levels T8 through L2; old mild compression injury at level T12; old healed right hip femoral neck fracture with a screw in the femoral head without sign of avascular necrosis; left knee advanced degenerative joint disease probably indicating chronic internal derangement; right femur healed fracture with hardware in place; and left tibia old healed tibial and fibula fractures with hardware in place.

(Id.) At step three, however, the ALJ concluded that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AT 14.)

Before proceeding to step four, the ALJ assessed plaintiff's Residual Functional Capacity ("RFC"), finding that plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b):

> Specifically, the claimant retains the capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8 hour workday; stand or walk for 6 hours in an 8 hour workday; is precluded from climbing ladders, ropes or scaffolds; may perform postural movements frequently; and must avoid concentrated exposure to workplace hazards.

---

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

(Id.) At step four, the ALJ determined that plaintiff "is capable of performing past relevant work as a truck service advisor, auto sales advisor, auto sales person, loan interviewer, analyst and owner/manager of food service" because such work does not require performance precluded by his RFC. (AT 18.)

Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from August 1, 2012, plaintiff's alleged disability onset date, through the date of the ALJ's decision on September 4, 2014. (Id.)

B.  Plaintiff's Substantive Challenges to the Commissioner's Determinations

1.  *Whether the ALJ failed to properly credit Dr. Trusnovic's treating opinion*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency;

event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

On January 15, 2014, plaintiff's treating physician William Trusnovic, M.D. completed a medical source statement. (AT 560–63.) Dr. Trusnovic opined that plaintiff has arthropathy and osteoarthrosis with severe chronic pain of his back and multiple joints, crepitus, decreased range of motion, medication side effects, and depression[6]. (AT 560–61.) According to Dr. Trusnovic these conditions cause the following functional limitations for plaintiff: the need to shift from sitting and standing positions at will; take unscheduled breaks; elevate legs level with his pelvis 50% of the time; never lift 10 lbs or more; rarely lift less than 10 lbs; never twist, stoop, crouch/squat, or climb ladders; rarely climb stairs; experience significant limitations in reaching, handling, and fingering with the bilateral upper extremities; be off task 25% or more of the time; tolerate only low stress work; and have more than four work absences per month. (AT 561–63.)

Dr. Trusnovic's opinion was contradicted by two non-examining consulting physicians, Christopher Maloney, M.D. and B. Sheehy, M.D. (See AT 78–86, 98–110.) Because Dr. Trusnovic's opinion was contradicted by other medical opinions in the record, the ALJ was required to provide specific and legitimate reasons for discounting his opinion. See Lester, 81 F.3d at 830–31. For the reasons discussed below, the court finds that the ALJ properly discharged that duty.

The ALJ gave Dr. Trusnovic's opinions little weight, explaining that

> [t]here is little evidence of any significant and persistent medication side effects, few complaints of depression in the progress notes, no impairment of his bilateral upper extremities including full range of motion and normal reflexes, sensation and motor strength, and adequate strength and neurologically intact lower extremities with

---

and (6) specialization. 20 C.F.R. § 404.1527.

[6] Dr. Tusnovic's opinion regarding plaintiff's depression was relayed by his checkmark in a pre-printed box relating to psychological conditions, but without any details or explanation. AT 561.

6

|   |   |
|---|---|
| 1 | the exception of some decreased sensation in the left lower extremity. |
| 2 | |

(AT 17.) The record supports the ALJ's finding that Dr. Trusnovic's opinion was supported by minimal clinical findings.

First, plaintiff made some subjective complaints of being "depressed and anxious" or "mildly depressed" between August 27, 2012 and August 30, 2012. (AT 353, 358, 419.) Thereafter, plaintiff had multiple medical exams in September and October of 2012 where depression was not mentioned in either his subjective complaints or the objective diagnoses. (See AT 350–52, 392–97.) After October 2012, depression is consistently listed as part of plaintiff's medical history. However, in the overwhelming majority of his examinations there are no subjective complaints or objective findings regarding depression. (See AT 370–75, 382, 424, 453, 460, 465, 468, 488–89, 595–596, 599–601.)

There is some evidence that plaintiff complained of depression. Examining psychologist Patricia McVey, Ph.D. diagnosed plaintiff with moderate major depressive disorder, after a June 21, 2013 evaluation. (AT 523.) Specifically, she observed that plaintiff's "affect was dramatic and his mood appeared moderately depressed and mildly anxious. While he endorsed moderate depression, he also reported getting some enjoyment from his two boys." (AT 521.) Yet, as the ALJ pointed out, plaintiff "neither sought out nor received any regular mental health treatment from either a psychiatrist or psychologist." (AT 16.) Moreover, after his examination by Dr. McVey, during an August 25, 2013 hospital visit, plaintiff "answered 'no' to the question 'Have you recently felt down, depressed, or hopeless?'" (AT 534.)

Therefore, the ALJ pointed to specific and legitimate reasons sufficient to discount Dr. Trusnovic's findings regarding the severity of plaintiff's depression.

Second, the ALJ noted that many of plaintiff's physical issues date back to a 1993 motor vehicle accident and that "[h]e was able to continue working despite his varied musculoskeletal impairments and only stopped working in August 2012 when he had a heart attack." (AT 15.) This is supported by plaintiff's hearing testimony and the fact that he moved to amend the onset date of his disability from July 2011 to August 2012. (See AT 31–32.) Also, the ALJ

7

specifically referenced the July 9, 2013 imaging studies, which support his findings. (AT 15.)

> [Skeletal Survey Study] . . . There are degenerative changes throughout the dorsal spine. Harrington rods are present from T8 through L2. The hardware appears intact. The degenerative process is most prominent at T11-12, and there may be an old mild compression injury of T12. **This has not progressed since 2012**. . . . **No acute disease. Minimal degenerative changes.** No sign of malignancy or trauma. **No systemic arthritis is suspected**.
>
> [Right Hip Study] . . . The appearance of the right hip is **not changed significantly since 2012. The fracture has healed satisfactorily with good callous formation**. There is no definite sign of osteomyelitis. . . . Resorption around the metallic components in the proximal femur may indicate loosening right low-grade chronic infection, but **this has not progressed since December 2012.**
>
> [Left Knee Study] . . . There is indication of an old healed left tibia fracture stabilized with a plate and multiple screws . . . . There is advanced degenerative joint disease in the knee joint, probably indicating a chronic internal joint derangement, but **this has not progressed since 10/10/12**.

(AT 649–50 (emphasis added).) These studies demonstrate no change or worsening in plaintiff's condition since 2012. As such, they also undermine Dr. Trusnovic's findings of extreme limitation since plaintiff did not claim such extreme limitation before August 2012.

Further, the ALJ determined that plaintiff's records consistently demonstrate less drastic restrictions than those posited by Dr. Trusnovic. (AT 15.) As the ALJ observed, plaintiff's 2012 and 2013 pain management progress notes show that plaintiff had "full range of motion of his cervical spine and upper extremities with normal reflexes, sensation and motor strength, decreased range of motion of his lumbar spine, with tenderness but full range of motion of his lower extremities with normal reflexes and full motor strength, some decreased sensation in [his] left lower extremity but normal sensation in [his] lower extremity . . ." (Id.; see AT 473–74, 478, 483, 493.) The ALJ also pointed to plaintiff's encounter with Daniel Fields, MD on January 28, 2013, which undermines Dr. Trusnovic's findings of extreme limitations:

> He can stand and move around and does not appear in that much distress[.] Mobility is limited because he had Harrington rods placed after [his] back fracture[.] He also complains about his left knee which he thinks is arthritic from all of his surgeries and having to walk funny but is not interested in a steroid injection today. Is not red swollen it is good range of motion of it [sic].

8

(AT 371.)

Finally, the ALJ properly relied on the opinions of non-examining consultative physicians, Drs. Maloney and Sheehy, which he gave some weight. (AT 16.) See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record."). The ALJ agreed with the opinions of Drs. Maloney and Sheehy that plaintiff retains the capacity to perform up to light exertion work activity with no climbing ladders, ropes, or scaffolds. (AT 16–17, 78–86, 98–110.) These opinions are consistent with and supported by the clinical findings outlined above.

Therefore, the court finds that the ALJ provided several specific and legitimate reasons for discounting Dr. Trusnovic's opinion.

2. *Whether the ALJ improperly discounted plaintiff's credibility*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

9

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AT 15.) Nevertheless, the ALJ discounted plaintiff's testimony "concerning the intensity, persistence and limiting effects of these symptoms [as] not entirely credible," providing several specific, clear, and convincing reasons for doing so. (Id.)

                i.        Dishonesty and inconsistency

The ALJ found that plaintiff was not credible due, in part, to his manipulative and dishonest behaviors. Plaintiff was discharged by his pain management physician because he was "dishonest about his medication use, obtaining opioids from different providers and lying about his Norco use." (AT 16, 491.) Additionally, plaintiff admitted to having falsified urine tests in the past. (Id.)

The ALJ also determined that plaintiff's statements about his ability to work were inconsistent. "Specifically, while he alleged that he is unable to perform and sustain all work activity since his alleged onset date, he looked for work after his alleged onset date and expressed to unemployment services that he was ready willing and able to work." (AT 16.) These conclusions are supported by plaintiff's own hearing testimony and unemployment documents in the record that show he was employed in 2013 and sought disability due to a fall at the workplace. (AT 28–30, 220.)

Furthermore, plaintiff's hearing testimony contradicted the objective evidence in the record. Plaintiff was adamant that he stopped taking opioid narcotics on January 28, 2013, even when the ALJ presented him with contradictory evidence in the record. (AT 35–38.) Specifically, the medical records reveal that plaintiff requested a refill of his pain medication from his pain management physician on January 28, 2013, and that he remained in pain management treatment until March 2, 2013. (AT 370, 382.) Moreover, the medical records demonstrate that plaintiff continued to receive prescriptions for Norco and Tramadol—two opioid narcotics—from other physicians through December 17, 2013, which contradicts his claim that he had stopped using narcotics eleven months earlier. (See AT 566, 570, 575, 591, 597.)

        ii.   Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). However, while lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here, the ALJ determined that the "objective medical evidence does not support [plaintiff's] allegations of a disabling physical impairment or combination of impairments and related symptoms." (AT 15.) This conclusion is supported by substantial evidence in the record. As discussed above, plaintiff's physical impairments were caused by a past motor vehicle accident. Still, he continued to work with these impairments, until a heart attack in August 2012. (Id.) Additionally, as outlined above, the objective evidence from plaintiff's x-rays and pain management progress notes demonstrates that his condition has not significantly worsened since 2012.

        iii.   Failure to seek treatment and failure to follow treatment plan

Failure to seek consistent treatment is a proper consideration when evaluating credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained

11

failure to seek treatment or to follow a prescribed course of treatment . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and quotation marks omitted).

Here, as discussed above, the ALJ noted that plaintiff "neither sought out nor received any regular mental health treatment from either a psychiatrist or psychologist." (AT 16.) Moreover, the ALJ pointed out that plaintiff has not been compliant with his treatment plan, as he continues to smoke, even though his physicians advised him to stop multiple times. (Id.; see AT 351–52, 393, 518.)

### iv. Conservative Treatment

Plaintiff's relatively conservative treatment was also a proper consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Here, the ALJ determined that although plaintiff "has received treatment for the allegedly disabling impairments, the treatment has been essentially routine and/or conservative in nature." (AT 16.) This conclusion is supported by substantial evidence, as plaintiff did not seek a new pain management physician, after his discharge in 2013. Further, the records demonstrate that plaintiff also refused conservative treatment at times. During a January 28, 2013 office visit, plaintiff complained about his left knee but had good range of motion and was not interested in a steroid injection for the pain. (AT 370–71.)

### v. Daily activities

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's

testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, the ALJ determined that plaintiff "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (AT 16.) The record supports this conclusion, as plaintiff reported significant daily activities to Dr. McVey. Specifically, plaintiff indicated that he works on the computer for a few hours at a time; organizes his children for the school day; cooks meals; does laundry and dishes; is capable of bathing and dressing himself; and drives short distances. (AT 520.)

To be sure, the record also contains some contrary evidence, such as his hearing testimony that he has good days and bad days, suggesting that plaintiff's activities are more limited. (AT 63.) However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

13

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Thus, the ALJ discounted the plaintiff's credibility for several clear and convincing reasons that were supported by substantial evidence in the record. See Thomas, 278 F.3d at 958–59.

> 3. *Whether the ALJ erred in not finding that plaintiff suffered from a severe mental impairment at step two*

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). As the Ninth Circuit Court of Appeals has explained, "the step[ ]two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).

20 C.F.R., Part 404, Subpart P, Appendix 1 lists four broad functional areas known as the "paragraph B" criteria, which the ALJ considered when making his step two determination. (AT 12.) In this case, the ALJ determined that plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area." (AT 13.)

The first functional area is activities of daily living. As explained above, the record demonstrates that plaintiff was able to do a number of activities, including driving, doing house work, organizing his children for school, etc. (AT 520.) The second functional area is social functioning. While the plaintiff apparently lied to his pain management physician and made some inappropriate flirtatious comments to Dr. McVey (AT 521), the record does not reveal any other issues with daily social functioning. The third functional area is concentration, persistence, or pace. The record supports the ALJ's finding that plaintiff has mild limitation in this functional area due to his adequate performance reading, understanding, and completing general office forms, and his IQ score of 86, suggesting adequate cognitive function. (AT 12–13, 519–524.)

14

| | |
|---|---|
| 1 | The fourth functional area is episodes of decompensation.  While the record demonstrates |
| 2 | plaintiff has experienced some random suicidal ideation (AT 520), there is no evidence of |
| 3 | "episodes of compensation which have been of extended duration." (AT 13).  Thus, substantial |
| 4 | evidence supports the ALJ's determination at step two. |
| 5 | Even assuming, without deciding, that the ALJ technically erred by not finding plaintiff's |
| 6 | mental impairment severe for purposes of step two, such error was harmless.  See Molina v. |
| 7 | Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account |
| 8 | of an error that is harmless").  Here, because the ALJ found plaintiff's physical impairments to be |
| 9 | severe at step two (AT 11), the ALJ proceeded to subsequent steps of the sequential disability |
| 10 | evaluation process.  Moreover, as explained above, the ALJ properly discredited Dr. Trusnovic's |
| 11 | treating opinion and properly discounted plaintiff's credibility during the process.  Accordingly, |
| 12 | the court finds no prejudicial error at step two. |

V. <u>CONCLUSION</u>

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 20) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 21) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  July 10, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE